FILED
05/02/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2023

**STATE OF TENNESSEE v. OLGA NARNIA SEVILLA**

**Appeal from the Criminal Court for Bradley County**
**No. 19-CR-262   Sandra N.C. Donaghy, Judge**

_____

**No. E2023-00541-CCA-R3-CD**

_____

A Bradley County jury convicted the Defendant, Olga Narnia Sevilla, of aggravated child abuse and aggravated child neglect, and the trial court sentenced her to a total effective sentence of twenty years.  On appeal, the Defendant contends that the evidence is insufficient to support her convictions and that the trial court erred when it sentenced her.  After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN W. CAMPBELL, SR. and MATTHEW J. WILSON, JJ., joined.

Wencke West, Cleveland, Tennessee, for the appellant, Olga Narnia Sevilla.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Shari Lynn Tayloe, District Attorney General; and Krista R. Cochran and Joseph V. Hoffer, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from the Defendant physically abusing and neglecting her three-month-old child, who arrived at the pediatrician's office with a broken arm, broken ribs, broken bones in her hands and legs, as well as in a state of severe malnourishment.  For these offenses, a Bradley County grand jury indicted the Defendant for aggravated child abuse and aggravated child neglect.

**A. Trial**

The following evidence was presented at the Defendant's trial: Dr. Susan Ermer testified that she was pediatrician in Cleveland, Tennessee who saw the victim at her medical practice on January 2, 2019. She described the infant as very quiet and still. Her mother, the Defendant, stated that the victim was not moving her right arm. Dr. Ermer observed the victim's arm and determined that it was "deformed" and "probably broken." The victim's ear was swollen, and she had sores around the outside of her mouth. After conducting a full physical examination of the victim, Dr. Ermer called an ambulance, and the victim was transported to the hospital. Dr. Ermer testified that the victim appeared severely malnourished for her age. The broken arm indicated to Dr. Ermer that the victim had suffered a non-accidental trauma because it takes "a lot of force" to break an infant's bone and that, even if the infant had fallen or been dropped, it generally did not result in a bone break. Dr. Ermer testified that the victim had been a healthy weight at birth and had only gained twelve ounces in the three months since birth. Dr. Ermer identified the victim as a case of "failure to thrive" and several pounds underweight.

Andy Wattenberger testified that he was employed by the Cleveland Police Department as a detective in the crimes against people unit and met with the Defendant, the victim's mother, as part of his investigation into this case. The Defendant reported that her five-year-old cousin had been playing with the victim earlier in the day and had fallen while holding the victim. The Defendant stated that other family members were with the victim, but she could not provide names and phone numbers. Officer Wattenberger was unable to verify that any other adults had taken care of the victim.

The Defendant told Officer Wattenberger that, several weeks before, two men had forced their way into her apartment and grabbed the victim before slinging her against a wall and forcing a bottle into her mouth. The Defendant reported that similar incidents with the same two men happened twice more. She stated that she was afraid to call the police or tell her family members.

The Defendant testified at trial that she was born in Honduras and was raising two children in Cleveland, Tennessee. She testified that the victim did not eat well and had problems keeping food down. The Defendant took the victim to the doctor where they did an ultrasound of the victim's stomach. The Defendant did not know about the hole in the victim's mouth. The Defendant testified about the events when two men broke into her apartment and hurt the victim. She stated that the men also raped her. On cross-examination, she agreed that she did not tell anyone about these incidents.

Based on this evidence, the jury convicted the Defendant of aggravated child abuse and aggravated child neglect.

## C. Sentencing

The trial court held a sentencing hearing, at which the Defendant's step-sister, Juana

Sevilla-Lagos, testified. Ms. Sevilla-Lagos had known the Defendant for almost twenty years and had never seen her abuse or hurt her children. The Defendant testified that she was deeply remorseful for the harm that had come to the victim.

Based on this evidence, the trial court stated that its sentencing decision was being made with the purposes and principles of sentencing in mind, considering the nature of the Defendant's criminal conduct, which the trial court described as being against a most vulnerable victim, a three-month-old child. The trial court noted the Defendant's lack of remorse and seeming unwillingness to be accountable for the safety of her child. The trial court noted that, as the victim's sole caregiver, it was the Defendant's duty to guard her from "every ill in this world" and provide for all her needs, including her nutritional needs. The trial court noted the victim's extensive physical injuries and her severe weight loss.

The trial court noted that both convictions were Class A felonies with a sentencing range of fifteen to twenty-five years. The trial court applied enhancement factor (5), that the Defendant treated the victim, or allowed the victim to be treated, with exceptional cruelty during the commission of the offense. T.C.A. § 40-35-114(5). The trial court stated that a child of this age, having multiple fractures in various stages of healing, had been treated with exceptional cruelty. The trial court noted that the child "had to be in pain" and was voicing her pain, and the Defendant responded by forcing a bottle in the victim's mouth. The trial court noted that the victim had been designated a "failure to thrive" case and that the Defendant chose not to take her to medical appointments to address her injuries and malnourishment. The trial court applied enhancement factor (14), that the defendant abused a position of private trust as the victim's sole caregiver. T.C.A. § 40-35-114(14). The trial court declined to impose consecutive sentencing. The trial court noted that the Defendant's convictions were not eligible for a probation sentence.

Based on these findings, the trial court imposed an effective sentence of twenty years of incarceration to be served at the statute-mandated 100 percent. It is from these judgments that the Defendant now appeals.

## II. Analysis
## A. Sufficiency of the Evidence

On appeal, the Defendant asserts that the evidence is insufficient to support her convictions for aggravated child abuse and aggravated child neglect. She contends that the proof established that she and the victim were attacked inside their home on several occasions and that there was insufficient proof that she was the cause of the victim's injuries or neglect. The State responds that the evidence of the injuries to the victim and her severe malnourishment was sufficient to prove that the Defendant, the victim's primary caregiver, was guilty of abuse and neglect of the victim. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard

of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "strongest legitimate view of the evidence" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*,

24 S.W.3d 274, 279 (Tenn. 2000)).  Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

As charged here, "A person commits the offense of aggravated child abuse . . . who commits child abuse, as defined in § 39-15-401(a) . . . and: (1) The act of abuse . . . results in serious bodily injury to the child."  T.C.A. § 39-15-402(a)(1).  "'Serious bodily injury to the child' includes . . . a fracture of any bone[.]"  *Id.* § 39-15-402(d).  Child abuse occurs when "[a]ny person . . . knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury[.]"  *Id.* § 39-15-401(a).  As for the offense of aggravated child neglect, a person commits child neglect who "knowingly . . . neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare."  *Id.* § 39-15-401(b).  "[B]efore a conviction for child neglect may be sustained, the State must show that the defendant's neglect produced an actual, deleterious effect or harm upon the child's health and welfare."  *State v. Mateyko*, 53 S.W.3d 666, 671-72 (Tenn. 2001).  "[T]he mere risk of harm is insufficient to support a conviction."  *Id.* at 667.

The evidence viewed in the light most favorable to the State was that the victim, who was an immobile infant, presented to the pediatrician as underweight, malnourished, with multiple physical injuries at various stages of healing, including numerous broken bones, along with injuries to her mouth and head.  This is sufficient evidence from which a jury could conclude that the three-month-old victim had suffered serious bodily injury and had been knowingly neglected in a way that injured her health and welfare.  The Defendant could not explain why the victim had been injured or was malnourished, nor could she explain why the victim had not been taken to the doctor sooner.  Her version of the events was rejected by the jury.  This is sufficient evidence from which a jury could conclude that the Defendant was guilty of aggravated child abuse and aggravated child neglect.

## B. Sentencing

The Defendant contends that her sentence is excessive.  The State responds that the trial court properly imposed a within-range sentence.  The State argues that the trial court properly applied several enhancement factors to justify a sentence greater than the minimum.  We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'"  *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012).  A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'"  *State v. Shaffer*,

45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Id.* A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. We note that the trial court declined to apply several enhancement factors sought by the State. Relevant to enhancement factor (5), that the Defendant treated the victim with exceptional cruelty, the evidence proved that the victim had sustained multiple bone fractures which were in various stages of healing and that she was severely malnourished. T.C.A. § 40-35-114(5) (2019). The trial court applied enhancement factor (14), that the Defendant abused a position of private trust, based on the evidence that the Defendant was the victim's sole caregiver and overseer of her medical care. T.C.A. § 40-35-114(14). As such, the appropriate application of enhancement factors (5) and (14) supports the trial court's sentencing decision. The Defendant is not entitled to relief on this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE